THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2018 DEC 21  P 4: 12

WILLIAM W. BLEVINS
CLERK  c c

| | | |
|---|---|---|
| DIANA B. CHENEVERT | * | CIVIL ACTION NO.: |
| | * | |
| **Plaintiff** | * | SECTION: |
| | * | |
| **versus** | * | JUDGE: |
| | * | |
| SONNY PERDUE, | * | MAGISTRATE: |
| SECRETARY OF AGRICULTURE | * | |
| | * | JURY DEMAND |
| **Defendant** | * | |
| | * | |

18-14156
SECT.HMAG.4

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

**NOW INTO COURT,** in proper person, comes the Plaintiff, Diana B. Chenevert, who respectfully alleges the following:

### PARTIES

1.     Plaintiff herein is Diana B. Chenevert (hereinafter "Ms. Chenevert" or "Plaintiff"), a person of the full age of majority and domiciled in the Parish of St. Tammany, State of Louisiana.

2.     Made defendant herein is Sonny Perdue in his official capacity as the Secretary of Agriculture (hereinafter "Defendant").

### JURISDICTION AND VENUE

3.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C.§ 1331, as this lawsuit is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* This Court has jurisdiction over the Louisiana state law claims asserted herein pursuant to 28 U.S.C. § 1367, as said state law claims form part of the same case or controversy under Article III of the United States Constitution.

✓ Fee $400.00
__ Process_____
X Dktd_____
__ CtRmDep_____
__ Doc. No._____

4.  Venue is proper in this District pursuant to 28 U.S.C. § 139l(b)(2). All of the parties are subject to the jurisdiction of this Court on the grounds that all have minimal contacts with Louisiana, and the incidents sued upon occurred in Orleans Parish, Louisiana.

## FACTS

5.  Upon information and belief, Defendant has more than fifteen employees.

6.  In January 2017, Defendant hired Ms. Chenevert as a Financial Management Analyst.

7.  Defendant acted with malice and/or reckless disregard for Ms. Chenevert's federally protected rights.

8.  On December 18, 2017, Ms. Chenevert contacted an EEO counselor.

9.  On January 19, 2018, a Notice of Right to File (NRF) was issued to Ms. Chenevert on Case Number OCFO-2018-00268.

10.  On January 29, 2018, a Notice of Right to File (NRF) was issued to Ms. Chenevert on Case Number OCFO-2018-00269.

11.  On February 9, 2018, Ms. Chenevert filed two formal complaints.

12.  On February 23, 2018, a Consolidated Acceptance Letter was issued to Ms. Chenevert.

13.  On August 24, 2018, Ms. Chenevert requested a Final Agency Decision on the merits of her complaints.

14.  Thereafter, a Final Agency Decision was issued.

15.  Ms. Chenevert's complaints included claims of sexual harassment, nonsexual harassment, hostile work environment, reprisal, and constructive discharge.

### Allegations

16.     On several dates during her one and a half years of employment, Ms. Chenevert was subjected to harassment (non-sexual) on the bases of race, political affiliation, reprisal and color including but not limited to the events described in paragraphs 17 through 21.

17.     Since December 2017, Ms. Chenevert's supervisor, Cynthia Pearson, has failed to act upon Ms. Chenevert's reported allegations of harassment against coworkers and suggested Ms. Chenevert talk to the Union.

18.     Since January 2017, and multiple occasions thereafter, Ms. Chenevert's supervisor repeatedly told her to "keep her head down, until probation was over" after Ms. Chenevert reported a coworker who walked up to her, grabbed her wrists and stated, "I am gonna get a piece of you, just like I did your momma."

19.     During January 2017, a coworker made multiple derogatory comments to Ms. Chenevert, such as "You're nothing like your mom;" "F&%#ing (profanity removed) dumb bitch;" yelled "I scared you, I scared you. I can tell you're scared from your voice and I can smell fear."

20.     During June 2017, Ms. Chenevert's supervisor told her to "ignore it, that she needed to make it to her year," when she reported a new series of incidents from a coworker and the following statements of coworkers: "like people that have parents that are Big S*&t (profanity removed) and "ones that their momma got them on;""Blacks that look White have no place in society;""Look at the way you walk. Come over here with that strut, tits and a%$ (profanity removed); and "Yes, let's line up all the Republicans, Whites and the Blacks that look White, like this one next to (name of person), shoot them executional style."

21.    During July through November 2017, management took no action on her reports of being taunted by a coworker's actions of bumping into her cubicle and statements like "This will kill you" (referring to a dumbbell set); "Being an expert marksman... ugly half-breeds... peeps need to be careful out there when leaving;" and "I'm packing, watch it."

22.    Since April 2017 through the present, Ms. Chenevert was subjected to sexual harassment, sexual assault, and non-sexual harassment on the bases of race, political affiliation, reprisal and color including but not limited to the events described in paragraphs 23 through 28.

23.    During April 2017, a male manager, Ivan Jackson, pressed his penis against Ms. Chenevert's buttocks and stated, "You are a five (5) and obviously you still don't know who I am," grabbed a bag of popcorn from Ms. Chenevert and stated, "He takes what he wants and he's a grade level that she will never see in her lifetime," grabbed her around the waist and commented that Ms. Chenevert's breasts were really nice and he likes them milky, grabbed Ms. Chenevert's hip and commented that she needed to wear more form fitting clothing.

24.    During May 2017, Ivan Jackson touched Ms. Chenevert's private area with his hand, pinned her against the wall, held her waist, pressed his body against hers and invited her to a "White party."

25.    During July 2017, Ivan Jackson grabbed Ms. Chenevert's purse, went through it and made the comment, "So many lipsticks and only one set of lips or are there many?"

26.    During August-October 2017, Ivan Jackson grazed Ms. Chenevert's breasts, commented about her clothing, her walk, her anatomy, and followed her to the bathroom and to her car.

27.    During November 2017, Ivan Jackson stopped Ms. Chenevert, asked if she was avoiding him and stated "she should be careful what she says because her mouth would get her

into trouble;" "he can either help her career or hurt it;" reminded her of her probation date, grabbed her hands and stated how little her hands were and how great they would look wrapped around him, looked her up and down, and stated she "made a mistake messing with management."

28.    In December 2017, three unidentified employees stated, "Ms. Chenevert better leave Ivan Jackson alone, if she knew what's good for her."

<u>CAUSES OF ACTION</u>

<u>COUNT I: SEXUAL HARRASSMENT/HOSTILE WORK ENVIRONMENT</u>

29.    Ms. Chenevert hereby incorporates all foregoing allegations by reference for the purposes of this count.

30.    Title VII and the Louisiana Employment Discrimination Law prohibits discrimination in the workplace on the basis of sex.

31.    A Title VII hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

32.    Ms. Chenevert was subjected to a hostile work environment at Defendant's place of business as she was continuously harassed, humiliated, and bombarded with unwanted sexual advances and sexual assault by co-workers at the worksite. She reported this sexual harassment to her supervisor on numerous occasions to no avail.

33.    Upon information and belief, Defendant maintains a sexual harassment reporting policy.

34. Ivan Jackson, Ms. Chenevert's manager, repeatedly sexually harassed Ms. Chenevert and subjected her to a hostile work environment by making sexual comments directed to Ms. Chenevert, by physically touching her, and sexually assaulting her.

35. The harassment experienced by Ms. Chenevert from Ivan Jackson was severe and of a nature that any reasonable person would find it hostile, abusive, threatening, and humiliating.

36. This hostile work environment altered the conditions of her employment to such a degree that she became fearful for her safety.

37. Defendant was aware of this conduct and did nothing, acting with malice and reckless disregard of Ms. Chenevert's federally protected rights.

## COUNT II: HARRASSMENT BASED ON RACE, COLOR, AND POLITICAL AFFILIATION/HOSTILE WORK ENVIRONMENT

38. Ms. Chenevert hereby incorporates all foregoing allegations by reference for the purposes of this count.

39. Title VII and the Louisiana Employment Discrimination Law prohibits discrimination in the workplace on the basis of race, color, and political affiliation.

40. A Title VII hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

41. Ms. Chenevert's race is Caucasian and African American.

42. Ms. Chenevert's color is fair complexion

43. Ms. Chenevert's political affiliation is Republican.

44. Ms. Chenevert was subjected to a hostile work environment at Defendant's place of business as she was continuously harassed, humiliated, and bombarded with negative

comments regarding her race, color, and political affiliation. She reported this harassment to her supervisor on numerous occasions to no avail.

45. Upon information and belief, Defendant maintains a harassment reporting policy.

46. Ms. Chenevert's co-workers repeatedly harassed Ms. Chenevert and subjected her to a hostile work environment by making derogatory racial comments directed to Ms. Chenevert.

47. Ms. Chenevert's co-workers repeatedly harassed Ms. Chenevert and subjected her to a hostile work environment by making derogatory comments directed to Ms. Chenevert concerning her skin color.

48. Ms. Chenevert's co-workers repeatedly harassed Ms. Chenevert and subjected her to a hostile work environment by making derogatory comments directed to Ms. Chenevert concerning her political affiliation.

49. The harassment experienced by Ms. Chenevert from her co-workers was severe and of a nature that any reasonable person would find it hostile, abusive, threatening, and humiliating.

50. This hostile work environment altered the conditions of her employment to such a degree that she became fearful for her safety.

51. Defendant was aware of this conduct and did nothing, acting with malice and reckless disregard of Ms. Chenevert's federally protected rights.

COUNT III: HARRASSMENT BASED ON REPRISAL/HOSTILE WORK ENVIRONMENT

52. Ms. Chenevert hereby incorporates all foregoing allegations by reference for the purposes of this count.

53. Title VII and the Louisiana Employment Discrimination Law prohibits discrimination in the workplace on the basis of reprisal.

54. A Title VII hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

55. Ms. Chenevert's mother had previously worked for Defendant and lodged an EEO complaint against Defendant.

56. Ms. Chenevert was subjected to a hostile work environment at Defendant's place of business as she was continuously harassed, humiliated, and bombarded with negative comments regarding her mother's history with defendant and EEO claim. She reported this harassment to her supervisor on numerous occasions to no avail.

57. Upon information and belief, Defendant maintains a harassment reporting policy.

58. Ms. Chenevert's co-workers repeatedly harassed Ms. Chenevert and subjected her to a hostile work environment by making derogatory comments directed to Ms. Chenevert concerning her mother's past employment and EEO allegations.

59. The harassment experienced by Ms. Chenevert from her co-workers was severe and of a nature that any reasonable person would find it hostile, abusive, threatening, and humiliating.

60. This hostile work environment altered the conditions of her employment to such a degree that she became fearful for her safety.

61. Defendant was aware of this conduct and did nothing, acting with malice and reckless disregard of Ms. Chenevert's federally protected rights.

<u>COUNT IV: CONSTRUCTIVE DISCHARGE</u>

62. Ms. Chenevert hereby incorporates all foregoing allegations by reference for the purposes of this count.

63. Title VII and the Louisiana Employment Discrimination Law prohibits companies from creating working conditions that are so intolerable that a reasonable employee feels compelled to resign.

64. Title VII and the Louisiana Employment Discrimination Law provide relief for individuals who resign their employment position due to intolerable working conditions.

65. A claim of constructive discharge under Title VII has two basic elements:aplaintiff must prove first that she was discriminated against by her employer to the point where a reasonable person in her position would have felt compelled to resign and she must also show she actually resigned.

66. During Ms. Chenevert's employment with Defendant, Ivan Jackson subjected Ms. Chenevert to severe and pervasive discrimination by touching her, sexual assaulting her, and making sexual comments directed to her.

67. During Ms. Chenevert's employment with Defendant, her co-workers subjected Ms. Chenevert to severe and pervasive discrimination by threatening her, stalking her, intimidating her, and verbally abusing her on the basis of her race, color, and political affiliation.

68. Ms. Chenevert reported to Defendant through her supervisor that she was being sexually harassed, sexual assaulted, both verbally and physically, and subjected to a hostile work environment by Ivan Jackson.

69. Ms. Chenevert reported to Defendant through her supervisor that her co-workers were subjected Ms. Chenevert to severe and pervasive discrimination by threatening her, stalking her, intimidating her, and verbally abusing her on the basis of her race, color, political affiliation, and her mother's prior employment and EEO claim.

70. Ms. Chenevert resigned her position with Defendant because she was subject to discrimination including severe and pervasive sexual badgering, harassment, and humiliation by Ivan Jackson.

71. Ms. Chenevert resigned her position with Defendant because she was subject to discrimination by co-workers including severe and pervasive badgering, harassment, and humiliation by her co-workers.

72. Because of this repeated sexual and non-sexual harassment/assault and a complete lack of effort by Defendant to correct it, Ms. Chenevert began to suffer severe anxiety which led to various health problems.

73. She continued to work because she needed to support herself financially.

74. Ms. Chenevert even complained to her supervisor that the continuous harassment was causing her to be ill.

75. Additionally, Ms. Chenevert's treating physician instructed her to refrain from going to work due to the emotional and physical toll the harassment was taking on Ms. Chenevert.

76. Instead of terminating/moving Ivan Jackson and Ms. Chenevert's co-workers, ,Ms. Chenevert's supervisor made no changes forcing Ms. Chenevert to continue in this unsafe and hostile work environment indefinitely.

77. Fearing for her health and safety, she resigned.

78. This severe and pervasive badgering, harassment, assault and humiliation that was sexual in nature or otherwise because of sex and refusal by Defendant to remedy the situation caused and/or encouraged Ms. Chenevert's leave without pay.

79. Defendant was aware of this conduct and did nothing, acting with malice and reckless disregard of Ms. Chenevert's federally protected rights.

## DAMAGES

80. As a result of the foregoing, Ms. Chenevert is entitled to an award of damages to include all compensatory, special, punitive and other damages as are reasonable in the premises, including, but not limited to:

a. Back pay;

b. Front pay;

c. Past, present, and future emotional distress;

d. Past, present, and future mental anguish;

e. Medical expenses, past, present, and future;

f. Punitive damages;

g. Attorney fees;

h. Expert witness fees,

i. Judicial interest;

j. Court costs; and

k. All other relief to which she may be entitled by law or equity.

## JURY DEMAND

Ms. Chenevert requests a trial on all questions raised by the complaint.

## PRAYER

**WHEREFORE**, Plaintiff, Diana B. Chenevert, prays that after due proceedings had, there be judgment rendered in her favor, and that she be awarded compensatory damages,

punitive damages, attorneys' fees, costs, legal interest, expert witness fees, and any other relief to which she is entitled under law and equity.

Respectfully submitted,

*Diana Chenevert*    12/21/18

IN PROPER PERSON


__/s/  Diana B. Chenevert__
**118 Napoleon Avenue**
**Slidell, LA 70460**
**dianamariebianchini@yahoo.com**
**504-444-1522**


**Please Serve:**

Service on defendant will be completed by waiver pursuant to Rule 4(d) of the FRCP.